### SAMMONS v. COMMISSIONER OF INTERNAL REVENUE (two cases).
### Nos. 9872, 9873.

United States Court of Appeals
Seventh Circuit.

Nov. 10, 1949.

Lloyd M. McBride, Chicago, Ill. (McBride & Baker, Chicago, Ill., of counsel), for petitioner.

Theron L. Caudle, Asst. Atty. Gen., Irving I. Axelrad, Asst. to Asst. Atty. Gen., U. S. Department of Justice, Ellis N. Slack, A. F. Prescott, Fred E. Youngman, Sp. Assts. to Atty. Gen., for respondent.

Before MAJOR, Chief Judge, KERNER and LINDLEY, Circuit Judges.

KERNER, Circuit Judge.

Taxpayers petition to review decisions of the Tax Court denying their claims to deduct an item of $95,000 or some part thereof as cost of material used in the publication of a reference book. The controversy arises in connection with the computation of their distributive shares of partnership income for the year 1943.

The facts were largely stipulated and, with the exception of certain testimony of one petitioner on hearing inconsistent with certain of the facts established by bookkeeping and documentary records, there is no dispute as to facts.

Petitioners were in 1942 the publishers of the Who's Who series of biographical books. The first of these had been published in 1899 by A. N. Marquis who published a new edition bienially thereafter and also put out similar books containing regional material. In 1926, pursuant to an agreement between Marquis, A. W. Shaw, and Wheeler Sammons, the A. N. Marquis

Company was incorporated with a capital stock of 1,500 shares having a par value of $100, for the purpose of buying all assets in the Marquis publishing business. Dorothy Sammons and Shaw each purchased 600 shares of stock, and the other 300 were purchased by Marquis. Subsequently, in 1928, Mrs. Sammons purchased Shaw's 600 shares, and Wheeler Sammons purchased Marquis' 300.

By the transactions of 1926 the corporation acquired all the assets of the Marquis publishing business, with certain specific exclusions not here material. These assets, according to an itemized list attached to the purchase agreement, were as follows:

"Cash on hand, accounts receivable, liabilities, etc., as per balance sheet below * * *

"All bound and unbound books on hand (except * * *) and all paper and supplies on hand.

"All furniture and fixtures.

"All electrotypes, cuts, dies, standing type on present and past editions of 'Who's Who in America,' * * *

"All trade-marks, patents, copyrights and trade names, pertaining to the publications owned by A. N. Marquis * * *

"All publishing rights pertaining to * * *

"The exclusive right to the use of the name 'A. N. Marquis' and 'A. N. Marquis & Co.' in connection with the publication of 'Who's Who in America' and all allied publications."

The assets acquired included 49,210 biographical sketches, although these were not specifically referred to in the inventory above.

In 1936 Mr. and Mrs. Sammons, the sole stockholders of A. N. Marquis Company, the corporation, entered into a partnership agreement pursuant to which they turned over their respective shares of stock in the corporation which thereupon delivered over all assets to the partnership in complete liquidation. The assets thus received by petitioners had an aggregate value of $196,-869, as follows: $71,916, cash; $29,953, miscellaneous assets; and $95,000, publish-

ing rights, copyrights, etc. The latter item of $95,000 was entered on the books of the partnership as "Goodwill, trademarks, trade names, copyrights and publishing rights." It was stipulated that neither the closing entries on the books of the corporation nor the opening entries of the partnership revealed any assets of an intangible nature other than this item of $95,000 and accounts receivable, prepaid insurance, and other similar current operating items.

Publication of Who's Who in America was continued after 1926, first by the corporation and later by the partnership under a similar name, A. N. Marquis Company (not incorporated). In 1942 the partnership published "Who Was Who in America," a compilation of the sketches of all deceased Americans which had appeared in any of the earlier volumes of Who's Who except those whose deaths had not then been verified. At the time he negotiated the purchase of the Marquis business Sammons had intended to publish Who Was Who at some future time. It contained some 27,458 sketches, 19,836 of which had been discontinued on account of death prior to 1938, 4,238 for reasons other than death but who had died prior to 1942, and 3,384, on account of death between 1936 and 1942. Who Was Who was published primarily as an aid in the sale of the 1942 edition of Who's Who, and the two volumes together included all the material contained in all the previous volumes.

In 1944 retroactive adjustments, the nature of which is not disclosed in this record, were made on the partnership books for the years 1942 and 1943 with respect to the $95,000 item. Thereafter, for the first time, petitioners asserted that it represented the cost of the sketches used in the publication of Who Was Who. However, the court noted that no deductions were taken on petitioners' tax returns for 1942 and 1943, and the issue does not appear to have been raised until the Commissioner asserted deficiencies in taxes of both parties for the year 1943, in response to which they claimed deduction of the $95,000 item as business expense for the partnership for the years 1942 to 1945 for the purchase of biographical sketches and publishing rights

used in Who Was Who, prorated on the basis of net sales of the book for the years 1942 to 1945. Petitioners filed petitions, identical except as to amount, in February, 1947, requesting adjustment of their taxes for the years 1941, 1942 and 1943. These petitions were dismissed as to the first two years for lack of jurisdiction for the reason that there had been no deficiency asserted as to those years.

Before the Tax Court petitioners' counsel stated, "It is the position of the petitioner here that that $95,000 or a very substantial portion of it represents the cost or a value of the sketches which ultimately became the basis of 'Who Was Who in America,' which was published in 1942." The only evidence introduced to overcome the fact that the item had been carried on the books of both the corporation and the partnership from 1926 to 1944 as representing intangibles was the testimony of Sammons that the sketches had a value of about $60,000 in 1926 and 1936, based on profit obtainable when published in the book he contemplated publishing when he negotiated the purchase of the business in 1926. He also sought to show that neither the publisher's name, the goodwill, the copyrights, the trademarks, the trade names, the subscription lists nor the agreement not to compete had any value when the purchase was made, and that therefore the only thing for which the $95,000 could have been paid was the sketches—"by a process of elimination, if by no other process, it must have been sketches."

Petitioners nowhere cite the particular section of the statute upon which they rely, referring to it only in general terms, "under well established interpretations of the Internal Revenue Code, the cost of those sketches is deductible if, as and when they are employed, as in this case, to the complete exhaustion of their value in the publication of a book for which they were originally purchased." These "well established interpretations" appear to be the three cases cited in their brief in support of their proposition that "the $95,000 is nothing more than a prepaid expense or a deferred charge * * * Spiegel, May, Stern Co. v. United States, 37 F.2d 988 [69 Ct.Cl.

110]; David Baird & Sons, Inc. [v. Com'r], 2 B.T.A. 901; Burroughs Adding Machine Co. v. Commissioner, 9 B.T.A. 938." All of these cases involved the treatment of inventories of supplies purchased in one year for consumption in the following year. Certainly none of them is authority for permitting retroactive change in the treatment of an item carried on the books, first of a corporation and then of a partnership, in the same manner for some eighteen years, to make possible a deduction for an alleged cost of production incurred two years before the attempted change.

As we study petitioners' contention and the record submitted to support it, it appears to us to amount to an attempt, eighteen years after the execution of a purchase agreement, to allocate $95,000 of the $150,000 paid for a going business, including all assets, to an item not even segregated in the inventory accompanying the agreement, and to make that allocation effective as of a date two years earlier for the purpose of decreasing taxes on the income derived from the business one year earlier. And if the court does not find that the entire $95,000 is deductible, the petitioners ask that some unidentified portion of it be deducted, relying on the case of Cohan v. Comm., 2 Cir., 39 F.2d 540, 544. That case, however, presents an entirely different problem. There the Board of Tax Appeals had refused to allow a theatrical producer any deduction whatever on account of entertainment and travel expense for the reason that no account of such expenditures had been kept, although it found that the taxpayer had spent considerable and that the sums were allowable expenses. Judge L. Hand, writing for the court, said, " * * * the Board should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making. But to allow nothing at all appears to us inconsistent with saying that something was spent."

In the case before us, the taxpayers have no such finding upon which to base a request for the allowance of a partial amount if not the entire $95,000. On the contrary,

the Tax Court found, "The amount ($95,-000) under the facts is fully explained as covering good will and other factors recited in the records made. No part of the amount can reasonably be allocated to cost in 1942 of 'Who Was Who.' "

We are no more convinced than was the Tax Court by the arguments and testimony in support of taxpayers' contention. The first two so-called propositions of law relied upon, that "The $95,000 does not represent good will either in whole or in part," and that "The asset purchased was the set of sketches of decedents for use in 'Who Was Who' " appear to us to be strictly issues of fact, resolved adversely to petitioners on the basis of substantial and persuasive evidence, and the third, that "The cost of the 'Who Was Who' sketches is deductible," is not supported by the facts.

The decisions of the Tax Court are affirmed.